# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 09-112

WILLIAM H. HEINO, SR., APPELLANT,

V.

ERIC K. SHINSEKI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided April 11, 2011)

*William H. Heino, pro se.*

*Will A. Gunn*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; *Joan E. Moriarty*, and *Bobbiretta E. Jordan*, all of Washington, D.C., were on the brief for the appellee.

Before HAGEL, MOORMAN, and SCHOELEN, *Judges*.

MOORMAN, *Judge*, filed the opinion of the Court. HAGEL, *Judge*, filed a separate opinion concurring in part and dissenting in part.

MOORMAN, *Judge*: The pro se appellant, veteran William H. Heino, appeals a December 24, 2008, decision of the Board of Veterans' Appeals (Board) that determined that he is obligated to pay VA a copayment for each 30-day or less supply of medication provided by VA on an outpatient basis in an amount established under 38 C.F.R. § 17.110. The appellant filed an informal brief, and the Secretary filed a brief. Panel consideration is required to determine whether 38 U.S.C. § 1722A, the statute under which the Secretary is required to charge a veteran a copayment for medication (1) allows the Secretary to set a copayment amount that requires veterans to pay the same copayment amount for "each 30-day supply of medication" but results in some veterans receiving a supply with fewer pills; and (2) whether 38 C.F.R § 17.110, the regulation implementing section 1722, interprets the statute's language regarding "the cost to the Secretary" in a manner

consistent with the statute. This appeal is timely, and this Court has jurisdiction under 38 U.S.C. §§ 7252(a) and 7266(a). For the following reasons, the Court will affirm the Board's December 2008 decision.

## I. BACKGROUND

The facts are not in dispute. Mr. Heino has an ongoing prescription for Atenolol pills. He is prescribed a 12.5 mg daily dose. The lowest strength available for prescription is dosed in 25 mg tablet form. Because the medication is not dispensed in a 12.5 mg tablet, his physician instructed him to split a 25 mg tablet in half to achieve the proper daily dosage. *See* Record (R.) at 118, 121. VA required Mr. Heino to pay a $7 copayment for a 30-day prescription supply of 15 tablets. *See* R. at 118. Mr. Heino complained that he was being overcharged, in light of the fact that he is required to split his pills, and requested that his copayment charge of $7 be reduced because the copayment amount exceeds the cost to the Secretary to dispense his medication. *See* R. at 118-19.[1] In a letter dated February 11, 2005, the VA Office of Regional Counsel determined that the copayment charge of $7 for Mr. Heino's 30-day supply of medication was correct according to applicable law and regulation. R. at 118-19 (citing 38 U.S.C. § 1722A and 38 C.F.R. § 17.110). Mr. Heino filed a Notice of Disagreement. R. at 104-17. In March 2005, the director of a VA medical center issued a Statement of the Case (SOC) on the issue of the interpretation of section 1722A, determining that Mr. Heino's copayment for medication should not be decreased to less than $7. R. at 91-95. The SOC noted that the decision was based on the regulation implementing section 1722A, 38 C.F.R. § 17.110, and stated that for the period from February 4, 2002, through December 31, 2002, the copayment amount is $7. R. at 95.

In the December 24, 2008, decision on appeal, the Board discussed the applicable law and regulations and concluded that the appellant was required to pay the $7 copayment set forth in the

---

[1] Apparently, this matter was related to a copayment debt that had been referred for VA debt collection. *See* R. at 123. It is not clear from the record of proceedings submitted by the Secretary whether any outstanding copayment debt has been collected.

regulation.  Supplemental (Suppl.) R. at 7A-9A.[2]  The Board found that the Secretary's "cost of filling [Mr. Heino's] 30-day prescription exceeds the $7 co[]payment established under 38 C.F.R. § 17.110," and that, as a matter of law, he was obligated to pay VA the copayment for each 30-day supply of medication provided by VA on an outpatient basis.  *Id.* at 9A.

## II.  ANALYSIS

### A.  Parties' Contentions

On appeal, the appellant essentially argues that he is being charged more than other veterans simply because he must split his pills:  While he must pay $7 for 15 tablets for a 30-day supply, other veterans are charged only $7 for 30, 60, or 90 tablets for their 30-day supply of the same pills. Although he argues that he is being required to pay more for his pills because he is required to split them, it appears that his argument is that his copayment cost for 30 pills ($14) is more than the copayment cost of other veterans ($7) who receive 30 pills in their 30-day supply.  In this regard, he maintains that the Secretary is violating 38 U.S.C. § 1722A(a)(2) because the Secretary requires that he pay a copayment amount "in excess of the cost to the Secretary" in dispensing the medication. *See* Appellant's Informal Brief (Br.) at 2.   He asserts that his "[s]plit pill supplies at the time of dispensing, are the same, and have the same actual cost as all other pill supplies." *Id.*

The Secretary argues that 38 U.S.C. § 1722A "clearly requires a co[]payment for 'each 30-day supply of medication'" and the supply is "not based upon the number of pills prescribed during the 30 day period of time."  Secretary's Br. at 9-10.  Relying on the regulatory history of 38 C.F.R. § 17.110, which implements the statute, the Secretary argues that the manner in which VA determines the copayment is reasonable.  *Id.* at 10-11.  The Secretary also reasons that the portion of the regulation that increases the medication copayment from $2 per prescription to $7 per prescription is justified by the administrative costs associated with dispensing medication and not

---

[2] The Court directed the Secretary to file a supplemental record of proceedings that contained the December 24, 2008, Board decision.  In response, on March 25, 2011, the Secretary filed a supplemental record of proceedings that contained the December 2008 Board decision.  However, the Secretary also included the entirety of the previously filed record of proceedings, including the pagination of documents that was used in that submission, and did not include any record pagination for the December 2008 Board decision.  Accordingly, to eliminate any confusion, the Court will refer to the first page of the 2008 Board decision as Supplemental Record at 3A, and the succeeding pages of the 2008 Board decision as 4A through 9A.  (The pagination for the March 2007 Board decision as Record at 3, therefore, remains unchanged.)

3

solely the cost of the medication itself.

B. Applicable Law and Regulation

Title 38 of the U.S. Code, section 1722A provides, in pertinent part:

(a)(1) Subject to paragraph (2), the Secretary shall require a veteran to pay the United States $2 for each 30-day supply of medication furnished such veteran under this chapter on an outpatient basis for treatment of a non-service-connected disability or condition. If the amount supplied is less than a 30-day supply, the amount of the charge may not be reduced.

(2) The Secretary may not require a veteran to pay an amount in excess of the cost to the Secretary for medication described in paragraph (1).

. . . .

(b) The Secretary, pursuant to regulations which the Secretary shall prescribe, may–

(1) increase the copayment amount in effect under subsection (a); and

(2) establish a maximum monthly and a maximum annual pharmaceutical copayment amount under subsection (a) for veterans who have multiple outpatient prescriptions.

38 U.S.C. §§ 1722A(a), (b). Subsection (b) of section 1722A, giving the Secretary authority to increase the copayment amount for medications, was added by a 1999 amendment to the statute. The Veterans Millennium Health Care and Benefits Act, Pub. L. 106-117, Title II, § 201(a)(2), 113 Stat. 1560 (Nov. 30, 1999).

Effective February 4, 2002, the Secretary promulgated a regulation implementing the statute. 66 Fed. Reg. 63449-01 (Dec. 6, 2001) (codified at 38 C.F.R. § 17.110). Before that time, the Secretary had not changed the $2 copayment amount for each 30-day or less supply of medication. With the promulgation of the regulation, the Secretary increased the copayment amount from $2 to $7. VA's implementing regulation, 38 C.F.R. § 17.110 ("Copayments for medication") provided, in pertinent part:

(a) *General*. This section sets forth requirements regarding copayments for medications provided to veterans by VA.

4

(b) *Copayments*. (1) Unless exempted under paragraph (c) of this section [(identifying specific situations–e.g., medication for a veteran's service-connected disability–that are not applicable here)], a veteran is obligated to pay VA a copayment for each 30-day or less supply of medication provided by VA on an outpatient basis (other than medication administered during treatment). For the period from February 4, 2002 through December 31, 2002, the copayment amount is $7. The copayment amount for each calendar year thereafter will be established by using the Prescription Drug component of the Medical Consumer Price Index as follows: For each calendar year beginning after December 31, 2002, the Index as of the previous September 30 will be divided by the Index as of September 30, 2001. The ratio so obtained will be multiplied by the original copayment amount of $7. The copayment amount for the new calendar year will be this result, rounded down to the whole dollar amount.

NOTE TO PARAGRAPH (B)(1): Example for determining copayment amount. If the ratio of the Prescription Drug component of the Medical Consumer Price Index for September 30, 2003, to the corresponding Index for September 30, 2001, is 1.2242, then this ratio multiplied by the original copayment amount of $7 would equal $8.57, and the copayment amount for calendar year 2004, rounded down to the whole dollar amount, would be $8.

38 C.F.R. §§ 17.110(a), (b) (2002). Accordingly, the regulation provides that any increase in the copayment amount in a given calendar year is determined using calculations based on the Prescription Drug component of the Medical Consumer Price Index (hereinafter CPI-P) and as provided in § 17.110.

Effective January 1, 2006, the Secretary increased the medication copayment amount from $7 to $8. 70 Fed. Reg. 72326-01 (Dec. 2, 2005).[3] In the Notice published in the Federal Register, the Secretary explained that until September 30, 2005, there had been no changes in the ratio used to calculate the copayment that resulted in an increase of VA's medication copayment rates. *Id*. The Secretary did not increase the $8 copayment amount in calendar year 2007, 2008, or 2009. *See*

---

[3] Computation of calendar year 2006 medication co[]payment amount:
  Prescription Drug Medical Consumer Price Index as of Sept. 30, 2005 = 351.8
  Prescription Drug Medical Consumer Price Index as of Sept. 30, 2001 = 304.8
  Index (ratio) = 351.8 divided by 304.8 = 1.1542
  Index (ratio) of 1.1542 x $7 = $8.08
  Co[]payment amount = $8.00

70 Fed. Reg. 72326-01.

72 Fed. Reg. 4773-01 (Feb. 1, 2007) (Notice); 73 Fed. Reg. 1914-02 (Jan. 10, 2008) (Notice); 73 Fed. Reg. 75494-02 (Dec. 11, 2008) (Notice).

Thereafter, the Secretary "froze" copayments at the $8 rate for the period January 1, 2010, through June 30, 2010, to give VA time "to determine whether the current methodology for establishing copayment amounts, consistent with [VA] responsibility under 38 U.S.C. § 1722A to require a copayment in order to control health-care costs, is appropriate for all veterans." 74 Fed. Reg. 69283-01 (Dec. 31, 2009) (interim rule); 75 Fed. Reg. 32668-01 (June 9, 2010) (final rule). By interim final rule, the Secretary has extended the "freeze" on the copayment amount of $8 until January 1, 2012, for veterans in VA health care system enrollment categories 2 through 6 and increased copayments as required by the current regulation only for veterans in priority categories 7 and 8. 75 Fed. Reg. 32670-01 (June 9, 2010) (interim final rule) (codified at 38 C.F.R. § 17.110 (2010) (revising paragraph (b)(1) to require either a $8 or $9 copayment amount depending on a veteran's priority category)). It appears that the appellant here is in priority category 5. *See* R. at 123.

### C. Statutory Interpretation and Reasonableness of the Regulation

#### 1. Interpreting "30-day supply"

The appellant does not challenge the Board's findings that (1) he is not exempt from a copayment in association with his VA prescribed medication; (2) he is not service connected for any disability; and (3) he was charged the standard copayment authorized under 38 C.F.R. § 17.110 for his VA-prescribed medication. Suppl. R. at 8A. The Board noted the appellant's argument that his $7 copayment is excessive and in violation of section 1722A based on his assertion that he is required to split 15 tablets in half for a 30-day supply while other veterans receive more than 15 tablets for their 30-day supply. Relying on the VA Regional Counsel's February 2005 letter, which in turn relied on the regulatory history of § 17.110, the Board determined that the appellant was obligated to pay VA the copayment for each 30-day or less supply of medication, which was prescribed by his physician, established by VA regulation § 17.110. The Secretary asserts that the copayment is consistent with the regulation and the statute. He argues that the statutory language "clearly requires a co[]payment for 'each 30[-]day supply of medication" and that the "supply is not based upon the number of pills prescribed during that 30[-]day period of time." Secretary's Br. at

6

9-10.

To assess the reasonableness of the Secretary's regulation and its consistency with the statute, "the first inquiry is whether the applicable statute provides a clear statement of congressional intent on point." *Sears v. Principi*, 349 F.3d 1326, 1328 (Fed. Cir. 2003). The Supreme Court has stated:

> If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress . . . . if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Chevron U.S.A., Inc. v. Natural Res. Def. Counsel, Inc.*, 467 U.S. 837, 842-43 (1984).

The Court agrees with the Secretary that the statutory language is clear as to the meaning of a "30-day supply." The appellant's argument that his participation in splitting the pills warrants special consideration is misplaced because the statute and regulation are clear that, irrespective of the type of medication and dosage, a *30-day supply* of medication requires a full copayment, which was $7 at the time the appellant was charged the copayment. *See* 38 U.S.C. § 1722A; 38 C.F.R. § 17.110. In requiring a copayment for a *30-day supply*, the focus of the statutory language is on *time*, not *dosage*. In other words, the statute does not require a copayment for *30 doses* of medication, but rather for a *30-day supply* of medication–regardless of the dosage prescribed for the 30-day period. If the appellant's prescription called for 50 mg per day, his 30-day *supply* of medication would consist of 60 pills (assuming the pills are only available in 25 mg form). The appellant's prescription, however, calls for 12.5 mg per day. Because the smallest dosage of his medication is 25 mg, his 30-day *supply* of medication consists of 15 pills. His participation in splitting the pills does not change the fact that he is receiving the prescribed supply of medication for a 30-day period and thus must pay the requisite copayment for that 30-day supply.

Moreover, the statute expressly provides that "[i]f the amount supplied is less than a 30-day supply, the amount of the charge may not be reduced." 38 U.S.C. § 1722A(a)(1). The regulation is consistent with this statutory language. *See* 38 C.F.R. § 17.110(b)(1) ("a veteran is obligated to pay VA a copayment for each 30-day *or less* supply of medication") (emphasis added). This language demonstrates that Congress recognized that prescriptions for shorter periods of time should be subject to the same copayment amount; thus a veteran with a 7-day prescription must pay the

7

same copayment as a veteran with a 30-day prescription. This further bolsters the Secretary's argument that the appellant is not entitled to a reduction in the copayment amount simply because he is receiving only 15 pills. The statutory and regulatory language reinforce the general intent that the copayment is linked to the veteran's prescription ("supply") and not the number of pills provided. The Court finds that the statutory language is clear and unambiguous on this point, and that the Secretary's interpretation of the statute is consistent with this language.

*2. Interpreting "cost to the Secretary"*

The more critical question before the Court is whether the Secretary's regulation that increased the copayment to $7 for each 30-day supply of medication is reasonable and whether the regulation is consistent with the requirement in section 1722A(a)(2) that provides "[t]he Secretary may not require a veteran to pay an amount in excess of the cost to the Secretary for medication described in paragraph (1)." Paragraph (1) sets the copayment as $2 "for each 30-day supply of medication furnished" to the veteran. 38 U.S.C. § 1722A(a)(1). Section 1722A(b)(1) specifically provides that the Secretary shall prescribe regulations that may increase the copayment amount in effect under subsection (a). The appellant argues that the regulation, however, conflicts with the provision in the statute that requires that the copayment amount not exceed the cost to the Secretary for medication described §1722A(a). The Secretary asserts that the "cost to the Secretary for medication" includes VA's costs "for dispensing a prescription." Secretary's Br. at 11. The Board had determined that, based on a Veterans Health Administration (VHA) study cited in the regulatory history, it was clear "that VA's cost of filling the veteran's 30-day prescription exceeds the $7 co[]payment established under 38 C.F.R. § 17.110." Suppl. R. at 9A.

Again, as above, the Court looks to the statutory language to determine whether the Secretary's regulation is reasonable and consistent with the statute. *Chevron* and *Sears*, both *supra*. The Court must, therefore, determine whether the statutory language allows the Secretary to include his administrative costs in calculating the "cost to the Secretary" for the medication provided to the veteran.

The Court holds that the statutory language does not clearly speak to this precise question. The "cost to the Secretary for medication" can be construed as being limited to the cost VA paid for the actual medication only or can be interpreted as including the Secretary's costs in dispensing the

8

medication, i.e., his administrative costs. Because "the statute is silent or ambiguous with respect to the specific issue," the Court must determine whether the Secretary's interpretation is reasonable. *Chevron*, 467 U.S. at 843. An "'agency that has been granted authority to promulgate regulations necessary to the administration of a program it oversees may fill in gaps in the statutory scheme left by Congress.'" *Sears*, 349 F.3d at 1329 (quoting *Contreras v. United States*, 215 F.3d 1267, 1274 (Fed. Cir. 2000)). An agency's gap-filling regulation must be upheld if it is reasonable and consistent with the statutory framework. *Id*. We hold that the Secretary's interpretation of the statute–as expressed in the regulation at issue here, 38 C.F.R.§ 17.110 (2002-2009)–is reasonable and consistent with the statute. Our holding is supported by both the regulatory and statutory history, as well as the statutory framework.

In the 2001 proposed rulemaking, the Secretary explained the increase in the copayment amount from $2 to $7 through December 31, 2002, as well as the establishment of escalator provisions to automatically increase the copayment amount. 66 Fed. Reg. at 36961. The Secretary stated:

> Based on a review of industry standards, we believe that the medication copayment should be increased from $2 to $7. We believe that the proposed $7 medication copayment would be lower than or equal to most medication copayments charged by the private health care industry. Further we believe it is a reasonable amount for the majority of medications dispensed.
>
> Also, under 38 U.S.C. 1722A, VA may not require a veteran to pay an amount in excess of *the actual cost of the medication and the pharmacy administrative costs related to the dispensing of the medication.* VHA conducted a study of the pharmacy administrative costs relating to the dispensing of medication on an outpatient basis and found that VA incurred a cost of $7.28 to dispense an outpatient medication even without consideration of the actual cost of the medication. *This amount covers the cost of consultation time, filling time, dispensing time, an appropriate share of the direct and indirect personnel costs, physical overhead and materials, and supply costs.* Under these circumstances, we believe that a $7 copayment would not exceed VA's costs.

*Id*. (emphasis added).

In proposing the escalator provisions for the copayment amount, the Secretary explained that this is "to ensure that the copayment amounts increase with inflation." *Id*. The Secretary stated:

9

Also, increasing the copayment amount in whole dollar increments would be easily understood by veterans and lessen the administrative burden on VA. Further, based on commensurate increased costs to VA, we believe that VA's costs would remain higher than the increases made by the escalator provisions.

*Id*. In adopting the proposed rule as the final rule without any changes, the Secretary noted that the 1999 amendment to the statute to specifically authorize VA to increase the copayment amount showed that "the statutory intent was for VA to increase the copayment amount." 66 Fed. Reg. at 63449. In its final rule, the Secretary noted certain legislative history for the 1999 amendment to section 1722A that added subsection (b):

> In helping VA to determine the amount of the copayment, the House Conference Report (H. Rept. 106-237, July 16, 1999) specifically noted that the copayment for DOD's Tricare Prime Plan included a $9 copayment for each 30-day prescription. Further, the House Conference Report indicated at page 42, that "[a] survey of copayment trends in 1996-7 found the most common [prescription drug] copayment among members of the American Association of Health Plans . . . [to be] in the range of $5 to $10 per prescription."

*Id*. Notably, the Secretary declined to make any change to its proposed rule based on a commenter who suggested that the copayment amount should vary based on geographic location. The Secretary noted: "We do not believe that this would be administratively feasible." *Id*. at 63450.

The same House Conference Report cited by the Secretary in his commentary to the final rule, noted above, also contains additional support for the Secretary's interpretation of the statute as allowing VA to include administrative costs in calculating the copayment amount. For instance, the House Report stated the following when discussing the need of VA to enhance revenues: "In the Committee's view, authorizing the Secretary to set reasonable copayment increases on prescription drugs is a reasonable policy in the face of VA's mounting pharmaceutical costs–approaching $2 billion annually. Notwithstanding an aggressive pharmacy benefits management policy, VA's pharmacy costs have nearly doubled since copayments were instituted some nine years ago." H.R. Rep. No. 106-237, Title II, § 201, 106th Cong., 1st Sess. (July 16, 1999) (to accompany H.R. 2116).

In addition to being supported by the legislative history, the Secretary's regulation is consistent with the statutory framework. *See Meeks v. West*, 12 Vet.App. 352, 354 (1999) ("'[E]ach part or section [of a statute] should be construed in connection with every other part or section so

10

as to produce a harmonious whole.'") (second alteration in original) (quoting 2A NORMAN J. SINGER, SUTHERLAND ON STATUTORY CONSTRUCTION § 46.05 (5th ed. 1992)). A practical result of the regulation was to clearly define the words "cost to the Secretary for medication" in section 1722A(a)(2) as comprising both the cost of the medication plus the administrative costs associated with dispensing the medication. In section 1722A(a)(2), Congress specifically pointed back to section 1722A(a)(1) for a description of the term "medication." Section 1722A(a)(1) describes the medication as a "30-day *supply* of medication *furnished*" the veteran. 38 U.S.C. § 1722A(a)(1) (emphasis added). So, "[t]he Secretary may not require a veteran to pay an amount in excess of the cost to the Secretary for [each 30-day supply of medication furnished]" to the veteran. 38 U.S.C. § 1722A(a). The term "supply" is defined as "an amount or quantity available for use." WEBSTER'S NEW WORLD DICTIONARY 1345 (3d ed. 1988). The term "furnish" means "to supply, provide, or equip with whatever is necessary or useful" and "implies the provision of all the things requisite for a particular service, action, etc. [to furnish a house]." *Id*. at 547. Thus, it appears that the statutory terms describing the medication contemplate more than the cost of the pills themselves. The costs of furnishing the 30-day supply of the medication implies that the cost of the medication also includes the costs incurred for providing or getting the pills into the hands of the veterans—the administrative costs associated with dispensing of the medication.

Moreover, Congress has indirectly indicated that it sanctions the Secretary's method of increasing the copayment for medications furnished to veterans on an outpatient basis for the treatment of a non-service-connected disability or condition. In 2002, the Secretary determined that VA was factoring in the administrative costs in its calculation of the copayment amount. In the nine years since the promulgation of the Secretary's regulation, Congress has had ample opportunity to change the way the Secretary has proceeded in this matter, but Congress has declined to do so. Instead, in 2003, Congress enacted revisions to the same statute that gives the Secretary authority to increase the copayment amount, but did nothing to reject or alter the Secretary's construction of the statute or circumscribe the Secretary's regulation establishing the manner in which he increases the copayment for medications. Specifically, the Court notes that the language in paragraphs 1 and 2 of section 1722A(a), as relevant here, has remained the same since its enactment as section 622A

11

in November 1990.[4]  Significantly, *after* the Secretary issued his regulation in February 2002 (§17.110), which for the first time increased the statutory $2 copayment amount for each 30-day or less supply of medication, which increase was based in part on administrative costs related to the dispensing of the medication, Congress *twice* amended section 1722A:  In February 2003, Congress amended subsections (c) and (d) of section 1722A.[5]  And in December 2003, Congress amended subsection (a)(3) of section 1722A regarding those veterans who are not required to pay a copayment for medications.[6]

Despite Congress's consideration of this statute and its provisions twice in 2003, Congress did not change subsection (b) regarding the authority Congress previously gave the Secretary to increase the copayment amount for medications under subsection (a).  Congress twice had the opportunity to object to the Secretary's regulation that increased the copayment for medications, including the considerations used by the Secretary for the increase, and did not do so.  Accordingly,

---

[4]        § 622A.  Copayment for medications

   (a)(1) Subject to paragraph (2), the Secretary shall require a veteran (other than a veteran with a service-connected disability rated 50 percent or more) to pay the United States $2 *for each 30-day supply of medication furnished such veteran* under this chapter on an outpatient basis for the treatment of a non-service-connected disability or condition.  If the amount supplied is less than a 30-day supply, the amount of the charge may not be reduced.

   (2) The Secretary may not require a veteran to pay an amount in *excess of the cost to the Secretary for medication described in paragraph (1).*

       . . . .

   Omnibus Budget Reconciliation Act of 1990, Pub. L. 101-508, Title VIII, § 8012(a)(1), 104 Stat. 1388-345 (Nov. 5, 1990) (emphasis added).

[5] In subsection (c), in the first sentence "under subsection (a)" was stricken and replaced with "under this section", and the following second sentence was stricken:  "Amounts collected through use of the authority under subsection (b) shall be deposited in the Department of Veterans Affairs Health Services Improvement Fund." Consolidated Appropriations Resolution, 2003,  Pub. L. 108-7, title I, § 113(c), 117 Stat. 482-83 (Feb. 20, 2003).  In addition, subsection (d) was stricken.  *Id*.  Subsection (d) formerly read, "The provisions of subsection (a) expire on September 30, 2002."

[6] In subsection (a)(3), "or" was stricken at the end of subparagraph (A), former subparagraph (B) was redesignated as subparagraph (C), and a new subparagraph (B) was inserted after subparagraph (A).  Veterans Health Care, Capital Asset, and Business Improvement Act of 2003, Pub. L. 108-170, Title I, § 101(b), 117 Stat. 2043 (Dec. 6, 2003).

it is reasonable here to deduce that Congress agrees with the manner in which the Secretary is proceeding with respect to including the administrative costs of dispensing the medication in the copayment for medications. *See California Industrial Products, Inc. v. United States*, 436 F.3d 1341, 1354 (Fed. Cir. 2006) ("These regulations are appropriately considered in the construction of [this particular statute] because Congress is presumed to be aware of pertinent existing law."); *Mudge v. United States*, 308 F.3d 1220, 1232 (Fed. Cir. 2002) ("In interpreting [this particular statute] as amended, we presume that Congress was aware of any administrative or judicial interpretations of the statute.").

The Court recognizes that there may be cases in which § 17.110, as applied to the particular facts of a case, does not produce the most cost-favorable result, such that, for example, two veterans, who pay the same copayment amount for the same type of medication, may receive varying amounts of the medication. "But a regulation is only required to operate reasonably, not perfectly." *Sears*, 349 F.3d at 1331. The Secretary took into account the administrative costs for dispensing the medication, as well as what plan would be administratively feasible. We hold that the Secretary has issued a gap-filling regulation that is not unreasonable or otherwise impermissible based on the contentions of the appellant and, therefore, uphold the regulation as applied to the appellant. We will, therefore, affirm the Board's December 24, 2008, decision. *See Sabonis v. Brown*, 6 Vet.App. 426, 430 (1994) (holding that where law and not evidence is dispositive, claim should be denied or appeal terminated because of lack of legal merit or lack of entitlement under the law); *see also Valiao v. Principi*, 17 Vet.App. 229, 232 (2003) (holding that "[w]here the facts averred by a claimant cannot conceivably result in any disposition of the appeal other than affirmance of the Board decision, the case should not be remanded for development that could not possibly change the outcome of the decision").

### III. CONCLUSION

Upon consideration of the foregoing analysis, the record on appeal, and the parties' pleadings, the December 24, 2008, Board decision is AFFIRMED.

HAGEL, *Judge*, joins, concurring in part and dissenting in part: I concur with the majority's conclusion that the plain and unambiguous language of 38 U.S.C. § 1722A(a)(1) requires a veteran to pay a full copayment for a 30-day supply of medication, without regard to the dosage or number of pills prescribed to the veteran. I write separately, however, to express my disagreement with the majority's conclusion that the phrase "cost to the Secretary for medication," as used in section 1722A(a)(2), is susceptible to more than one interpretation.

The majority concludes that the phrase "cost to the Secretary for medication" contained in section 1722A(a)(2) is ambiguous in that it "can be construed as limited to the cost VA paid for actual medication only or can be interpreted as including the Secretary's costs in dispensing the medication, i.e., his administrative costs." Majority Opinion at ___. I would conclude that this language is clear, unambiguous, and cannot be construed as including costs incurred by the Secretary in dispensing the medication.

"The starting point in interpreting a statute is its language, for '[i]f the intent of Congress is clear, that is the end of the matter.'" *Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 409 (1993) (quoting *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984)). "In determining the plain meaning of statutory language, 'legislative purpose is expressed by the ordinary meaning of the words used.'" *Jones v. Brown*, 41 F.3d 634, 638 (Fed. Cir. 1994) (quoting *Ardestani v. INS*, 502 U.S. 129, 136 (1991)).

The statutory provision at issue here, section 1722A(a)(2), states: "The Secretary may not require a veteran to pay an amount in excess of the cost to the Secretary for medication described in paragraph (1)." As the majority notes and I agree, section 1722A(a)(2) therefore refers back to section 1722A(a)(1) to clarify which medication is at issue. *See Talley v. Derwinski*, 2 Vet.App. 282, 286 (1992) ( holding that "[e]ach part or section [of a statute] should be construed in connection with every other part or section so as to produce a harmonious whole" (citation omitted; internal quotation marks omitted)). In relevant part, section 1722A(a)(1) provides that "the Secretary shall require a veteran to pay the United States $2 for *each 30-day supply of medication furnished such veteran under this chapter on an outpatient basis for the treatment of a non-service-connected disability or condition. . . .*" 38 U.S.C. § 1722A(a)(1) (emphasis added). Accordingly, when these provisions are read together, section 1722A(a)(2) clearly prevents the Secretary from "requir[ing] a veteran to pay

14

an amount in excess of the cost to the Secretary for [each 30-day supply of medication furnished such veteran under this chapter on an outpatient basis for the treatment of a non-service-connected disability or condition]." 38 U.S.C. § 1722A(a).

Nowhere in this statutory interplay is there a reference to administrative costs incurred by the Secretary in dispensing the veteran's 30-day supply of medication, costs that are wholly apart from the cost to the Secretary for the medication itself. Congress could, of course, have included language in the statute prohibiting the Secretary from requiring a veteran to pay more than the cost to the Secretary for the medication *plus* the cost of the Secretary's overhead for dispensing that medication. To this end, it is notable that in 2002, when Congress first authorized VA to increase the $2 copayment found in section 1722A(a)(1) by adding subsection (b), it did not, in any way, alter the language of section 1722A(a)(2). *See* The Veterans Millennium Health Care and Benefits Act, Pub. L. 106-117, Title II, § 201(a)(2), 113 Stat. 1560 (Nov. 30, 1999). Certainly, if Congress wished to allow VA to pass on rising administrative and pharmacy costs to veterans by virtue of increased copayments for medication furnished to them, it could have done so by removing subsection (a)(2) of section 1722A or adding language to that subsection that contemplated such costs. As it did not do so, however, I believe the meaning of the statutory language, and therefore Congress's intent, is clear and does not contemplate such administrative costs. Accordingly I would determine that this "is the end of the matter" and that both the Court and VA "must give effect to the unambiguously expressed intent of Congress," which is to prohibit the Secretary from charging a veteran a copayment for a 30-day supply of medication in excess of the cost to the Secretary for that medication. *Chevron,* 467 U.S. at 842.

To be clear, I find no conflict between the past and present versions of 38 C.F.R. § 17.110 and section 1722A. By amending section 1722A to add subsection (b), Congress clearly empowered VA to promulgate regulations increasing the copayment charged to veterans, previously set by statute at $2. Further, because, in section 1722A(a)(1), Congress initially established a blanket copayment of $2 to be paid by all such veterans, regardless of the type or amount of medication furnished, it cannot be said that VA acted unreasonably by maintaining a blanket copayment when it promulgated § 17.110 in 2002. Nevertheless, pursuant to the plain language of section 1722A(a)(2), any copayment for which a veteran would ordinarily be responsible pursuant to section 1722(a)(1) and

15

§ 17.110 must be reduced when that amount would be in excess of the cost to the Secretary for the 30-day supply of medication furnished to the veteran, regardless of the type of medication or dose prescribed.

In the present case, because the appellant is required to split his Atenolol tablets to obtain the desired dose, his 30-day supply of medication is 15 tablets. He argues that, by requiring him to pay the full copayment amount established by § 17.110 ($7 from February 4, 2002, to December 31, 2005, and $8 thereafter), VA is violating section 1722A(a)(2) by charging him more than the cost of this medication to the Secretary. Inherent in this argument is the appellant's contention that the Secretary pays less for 15 Atenolol tablets than VA has required him to pay (previously $7, now $8) as a coypayment.

The appellant also made this argument on appeal to the Board. *See* Supplemental R. at 8 ("The Board additionally notes that the veteran has repeatedly asserted that the cost of $7 for his co[]payment is excessive and in violation of 38 U.S.C.[] § 1722A."). In dismissing this argument, the Board relied on the Veterans Health Administration study of VA's pharmacy administrative costs that was referenced by the Secretary in the 2001 proposed rulemaking that ultimately led to the promulgation of 38 C.F.R. § 17.110 (2002). As noted in the majority opinion, that study found that "VA incurred a cost of $7.28 to dispense an outpatient medication *even without consideration of the actual cost of the medication*." 66 Fed. Reg. 36,960, 36,961 (2001) (emphasis added). The Board reasoned that, because the study indicated that VA incurs a $7.28 administrative cost every time it dispenses medication on an outpatient basis, "it [is] clear that VA's cost of filling the [appellant's] 30-day prescription exceeds the $7 co[]payment established under § 17.110." Supplemental R. at 9. Implicit in this reasoning is that the Board interpreted section 1722A(a)(2) as including the Secretary's administrative costs associated with dispensing the medication as part of the cost of the medication to the Secretary.

When a pure question of law, such as the interpretation of a statute, is at issue, the Court reviews the conclusions of the Board de novo, without deference. *Smith v. Gober*, 14 Vet.App. 227, 230 (2000). As explained above, after reviewing the language of section 1722A, I would conclude that the plain and unambiguous language of subsection (a)(2) prohibits the Secretary from requiring a veteran to pay an amount in excess of the cost to the Secretary for each 30-day supply of

16

medication furnished to him or her, without regard to the administrative costs incurred by the Secretary in actually dispensing such medication. I would therefore conclude that the Board's interpretation of that provision was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. *See Kent v. Principi*, 389 F.3d 1380, 1384 (2004) (holding that the "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law" standard of review "contemplates de novo review of questions of law"). Accordingly, I would set aside the Board's December 2008 decision to the extent that it concluded that the appellant's copayment was not excessive under section 1722A(a)(2) and would remand the matter for further development and readjudication consistent with a proper interpretation of section 1722A(a)(2).

Lastly, I understand that some might say that the interpretation that I express would place an unnecessary accounting burden on VA. The calculation that I believe the statute requires VA to make in these instances is, however, routinely made up front by private pharmacies when determining the profit margin sought on each drug dispensed to their customers. Thus, I do not believe that such a calculation places an unreasonable burden on VA. As a result, I do not believe that my interpretation of section 1722A produces an absurd result.