# United States Court of Appeals
# for the Federal Circuit

---

**WILLIAM H. HEINO, SR.,**

*Claimant-Appellant,*

**v.**

**ERIC K. SHINSEKI, SECRETARY OF VETERANS AFFAIRS,**

*Respondent-Appellee.*

---

2011-7160

---

Appeal from the United States Court of Appeals for Veterans Claims in Case No. 09-112, Judge William A. Moorman.

---

Decided: June 28, 2012

---

NATHAN S. MAMMEN, Kirkland & Ellis LLP, of Washington, DC, argued for claimant-appellant. With him on the brief was JOSEPH F. EDELL.

MICHAEL P. GOODMAN, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent-appellee. With him on the brief were TONY WEST, Assistant Attorney General, JEANNE E. DAVIDSON, Director, and MARTIN F. HOCKEY, JR., Assistant Director. Of

counsel on the brief were SUSAN BLAUERT, Deputy Assistant General Counsel, and JENNIFER A. GRAY, Attorney, United States Department of Veterans Affairs, of Washington, DC.

———————————

Before RADER, *Chief Judge*, PLAGER, and WALLACH, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* WALLACH.
Opinion concurring filed by *Circuit Judge* PLAGER.

WALLACH, *Circuit Judge*.

William H. Heino, Sr. ("Mr. Heino") appeals from a judgment of the United States Court of Appeals for Veterans Claims ("Veterans Court") affirming a decision by the Board of Veterans' Appeals ("Board") denying him a lower copayment for his prescribed medication. Mr. Heino contends that his copayment amount must be reduced because it is more than what the Department of Veterans Affairs ("VA") pays for his medication and that 38 U.S.C. § 1722A(a)(2) prohibits the VA from charging a copayment in excess of what the VA pays for a veteran's medication. However, because section 1722A(a)(2) is ambiguous, and because the VA's copayment regulation, 38 C.F.R. § 17.110, is reasonable in light of the statute, we affirm.

## I.

Mr. Heino, a veteran, is prescribed a daily dose of 12.5 milligrams of Atenolol.[1] The lowest strength available for the prescription is a 25 milligram tablet, so Mr. Heino's physician instructed him to split each tablet in half. At the time this case began, Mr. Heino paid a $7 copayment

———————————

[1] Atenolol is a drug commonly used to treat high blood pressure.

for a 30-day supply of 15 tablets, which he claimed was excessive in light of the fact that some veterans paid the same copayment for twice the medication. On March 13, 2002, Mr. Heino sent a letter to the VA requesting that it adjust his copayment. The VA responded by stating that the copayment "is being applied as it should be." In February 2004, Mr. Heino again contested his copayment amount to the VA. In a letter dated February 11, 2005, the VA Office of Regional Counsel determined that the $7 copayment was correct under applicable law and regulation. Mr. Heino filed a Notice of Disagreement with the VA's decision and on December 24, 2008, the Board concluded that the $7 copayment amount was proper.[2]

Mr. Heino appealed the Board's decision to the Veterans Court, and the Veterans Court affirmed. *Heino v. Shinseki*, 24 Vet. App. 367 (2011). Mr. Heino argued that the regulation the VA uses to calculate his copayment amount, 38 C.F.R. § 17.110, conflicts with section 1722A(a)(2), which prohibits the VA from charging a copayment "in excess of the cost to the Secretary for medication," because the actual cost of his Atenolol prescription was well below $7.[3] Contrary to Mr. Heino's interpretation of the statute, the Veterans Court held that "the cost" referred to in section 1722A(a)(2) could "be

---

[2] The Board initially agreed with the VA in a March 2007 decision. After Mr. Heino appealed that Board decision to the Veterans Court, it was discovered that the VA had lost Mr. Heino's claims file. As a result, the Veterans Court remanded the case for readjudication. The readjudicated proceeding was decided by the Board on December 24, 2008.

[3] Throughout this opinion we refer to the cost of a veteran's prescribed medication—the pills or tablets themselves—as the "actual cost" of medication. We refer to the cost associated with dispensing a veteran's prescription as the VA's "administrative cost."

interpreted as including the Secretary's costs in dispensing the medication, *i.e.*, his administrative costs" as well as the VA's actual cost. *Id.* at 373. Because the term "the cost" was ambiguous, the Veterans Court reviewed the VA's copayment regulation, which did not charge Mr. Heino a copayment in excess of the VA's projected average administrative cost, for reasonableness. *Id.* The Veterans Court held that given the "regulatory and statutory history, as well as the statutory framework," the regulation was valid.[4] *Id.*

Judge Hagel dissented in part and reasoned that the phrase "the cost to the Secretary for medication" in section 1722A(a)(2) is "clear, unambiguous, and cannot be construed as including costs incurred by the Secretary in dispensing the medication." *Id.* at 376 (Hagel, J., dissenting). Judge Hagel stated that "[n]owhere in this statutory interplay is there a reference to administrative costs incurred by the Secretary in dispensing the veteran's 30-day supply of medication, costs that are wholly apart from the cost to the Secretary for the medication itself." *Id.* at 377.

Mr. Heino filed a timely notice of appeal to this court. We have jurisdiction over this appeal pursuant to 38 U.S.C. § 7292(a).

---

[4]     Mr. Heino also argued that his copayment was excessive because he was charged the same copayment as other veterans who receive more medication in their 30-day supply. The Veterans Court held that section 1722A(a)(1), which states that the VA may charge a veteran a copayment "for each 30-day supply of medication" allows the VA to charge a copayment for "*a 30-day supply* of medication—regardless of the dosage prescribed for the 30-day period." *Heino*, 24 Vet. App. at 372 (emphasis in original).

II.

To determine whether the VA is correctly charging Mr. Heino, we must interpret 38 U.S.C. § 1722A and determine whether 38 C.F.R. § 17.110 comports with the statute. We will first discuss the law and regulations at issue in this case and then will proceed by examining them under the framework provided in *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984).

A.

What is now section 1722A was initially codified as 38 U.S.C. § 622A by the Omnibus Budget Reconciliation Act of 1990, Pub. L. No. 101-508, § 8012, 104 Stat. 1388 (1990). In 1991 Congress redesignated the law as 38 U.S.C. § 1722A without amending its language. Pub. L. No. 102-83, § 5(a), 105 Stat. 378 (1991). The current section 1722A(a)(1) is substantively the same as the 1990 law, *see* 38 U.S.C. § 1722A(a)(3) (incorporating the language removed from the original section 622A(a)(1)), and the current section 1722A(a)(2) is identical to the original statute. The current law reads:

> (a)(1) Subject to paragraph (2), the Secretary shall require a veteran to pay the United States $2 for each 30-day supply of medication furnished such veteran under this chapter on an outpatient basis for the treatment of a non-service-connected disability or condition. If the amount supplied is less than a 30-day supply, the amount of the charge may not be reduced.
>
> (2) The Secretary may not require a veteran to pay *an amount in excess of the cost to the Secretary for medication* described in paragraph (1).

38 U.S.C. § 1722A(a)(1)-(2) (emphasis added). In 1999, as part of the Veterans Millennium Health Care and Benefits Act, Pub. L. No. 106-117, § 201, 113 Stat. 1545 (1999), Congress added the current subsection (b) to the statute, which reads:

> (b) The Secretary, pursuant to regulations which the Secretary shall prescribe, may--
>
> (1) *increase the copayment amount in effect under subsection (a)*; and
>
> (2) establish a maximum monthly and a maximum annual pharmaceutical copayment amount under subsection (a) for veterans who have multiple outpatient prescriptions.

38 U.S.C. § 1722A(b) (emphasis added). A report from the House Committee on Veterans' Affairs stated that the VA's new authority under section 1722A(b) was intended to bring the VA's benefit program in line with private and other government healthcare providers where individuals carry a larger share of costs. H.R. Rep. No. 106-237, at 41-42 (1999). The report stated that allowing the VA:

> to set reasonable copayment increases on prescription drugs is a reasonable policy in the face of VA's mounting pharmaceutical costs–approaching $2 billion annually. Notwithstanding an aggressive pharmacy benefits management policy, VA's pharmacy costs have nearly doubled since copayments were instituted some nine years ago.

*Id.* at 42. The report mentioned that although Congress was granting the VA "relatively broad discretion" to raise copayments, the VA should exercise "caution that copayments not be set so high as to result in veterans not seeking needed care and services . . . ." *Id.* at 43.

Pursuant to subsection (b)(1), the VA published a proposed rule in 2001 that would increase the copayment amount to $7 from the $2 listed in section 1722A(a)(1). Copayments for Medications, 66 Fed. Reg. 36,960, 36,960-36,961 (proposed July 16, 2001) (to be codified at 38 C.F.R. pt. 17). Additionally, the proposed rule would enact an escalator provision to increase copayments with inflation as measured by the prescription drug component of the Medical Consumer Price Index. *Id.* However, the provision would round all increases in inflation down to the nearest whole dollar.[5] *Id.* In that proposed rulemaking, the VA stated:

[U]nder 38 U.S.C. 1722A, VA may not require a veteran to pay an amount *in excess of the actual cost of the medication and the pharmacy administrative costs related to the dispensing of the medication.* [The Veterans Health Administration] conducted a study of the pharmacy administrative costs relating to the dispensing of medication on an outpatient basis and found that VA incurred a cost of $7.28 to dispense an outpatient medication even without consideration of the actual cost of the medication. This amount covers the cost of consultation time, filling time, dispensing time, an

---

[5]    The proposed rule would increase copayments according to a set formula. As the VA stated:

For each calendar year beginning after December 31, 2002, the [prescription drug component of the Medical Consumer Price Index] as of the previous September 30 will be divided by the Index as of September 30, 2001. The ratio so obtained will be multiplied by the original copayment amount of $7. The copayment amount for the new calendar year will be this result, rounded down to the whole dollar amount.

Copayments for Medications, 66 Fed. Reg. at 36,961.

> appropriate share of the direct and indirect per-
> sonnel costs, physical overhead and materials,
> and supply costs. Under these circumstances, we
> believe that a $7 copayment would not exceed
> VA's costs.

*Id.* at 36,961 (emphasis added). The VA further stated that "based on commensurate increased costs to VA, we believe that VA's costs would remain higher than the increases made by the escalator provisions." *Id.* Following a notice-and-comment period, the VA issued a final rule implementing the proposed rule, which was codified as 38 C.F.R. § 17.110. In finalizing the rule, the VA stated:

> Many recent newspaper articles have reported
> dramatic increases throughout the health care in-
> dustry for medication copayment amounts which
> are reflective of increases in medication costs. Ac-
> cordingly, even with the increase we may have
> one of the lowest copayment amounts. Under
> these circumstances, we believe that a $7 copay-
> ment amount is reasonable. Further, we believe
> that increases should be based on the Prescription
> Drug Component of the Medical Consumer Price
> Index since it is most relevant to the cost of pre-
> scriptions and thereby should be relevant to any
> general increases in medication copayments in the
> private sector.

Copayments for Medications, 66 Fed. Reg. 63,449 (Dec. 6, 2001). In response to commenters that stated "they would return to private-sector health care if the copayment were increased," the VA stated that it believed its copayments

were "still on the low end of the private-sector copayment scale."[6] *Id.* at 63,450.

## B.

This court has limited jurisdiction to review appeals from the Veterans Court. We lack jurisdiction to review factual determinations outside of constitutional claims, but can review questions of law. 38 U.S.C. § 7292(d). We review the Veterans Court's interpretation of a statute *de novo*. *Boggs v. Peake*, 520 F.3d 1330, 1334 (Fed. Cir. 2008).

Under applicable law, the VA may not charge a veteran a copayment "in excess of the cost to the Secretary

---

[6]    Effective January 2006, the VA increased the copayment amount from $7 to $8 pursuant to the escalator provision. Copayment for Medication, 70 Fed. Reg. 72,326 (Dec. 2, 2005). In December 2009, the VA issued a temporary "freeze" on the copayment amount at $8 to "determine whether the current methodology for establishing copayment amounts, consistent with [VA's] responsibility under 38 U.S.C. § 1722A to require a copayment in order to control health-care costs, is appropriate for all veterans." Copayments for Medications, 74 Fed. Reg. 69,283, 69,283-69,284 (Dec. 31, 2009). In 2010, the VA extended the $8 copayment freeze until January 1, 2012 for veterans in enrollment priority categories 2 through 6 but increased the copayment amount to $9 for veterans in priority categories 7 and 8. Copayments for Medications After June 30, 2010, 75 Fed. Reg. 32,670, 32,670-32,671 (June 9, 2010); *see* 38 C.F.R. § 17.36 (establishing order of priority). Most recently, the VA again extended the $8 copayment freeze for priority categories 2 through 6 until 2013 but did not freeze copayments for veterans in priority categories 7 and 8, which are permitted to increase according to the escalator provision. Copayments for Medications in 2012, 76 Fed. Reg. 78,824, 78,824-78,825 (Dec. 20, 2011).

for medication described in [section 1722A(a)(1)]." 38 U.S.C. § 1722A(a)(2). The dispute in this case lies in the meaning of that phrase. In reviewing the VA's copayment scheme, we must apply a *Chevron* analysis, which requires two steps. First, we must determine "whether Congress has directly spoken to the precise question at issue." *Chevron*, 467 U.S. at 842. In this case, the "precise question at issue" is whether "the cost to the Secretary for medication," 38 U.S.C.§ 1722A(a)(2), refers to only the actual cost of medication or may also refer to administrative costs. "If the intent of Congress is clear, that is the end of the matter . . . ." *Chevron*, 467 U.S. at 842-43. However, if "Congress has not directly addressed the precise question at issue," we must, second, determine if the VA's copayment regulation is "based on a permissible construction of the statute." *Id.* at 843.

1.

In order to determine whether a statute clearly shows the intent of Congress in a *Chevron* step-one analysis, we employ traditional tools of statutory construction and examine "the statute's text, structure, and legislative history, and apply the relevant canons of interpretation." *Delverde, SrL v. United States*, 202 F.3d 1360, 1363 (Fed. Cir. 2000).

Beginning with the statute's text, Mr. Heino argues that "the cost" referred to in section 1722A(a)(2) should be afforded its plain meaning, which he contends is the actual cost of medication given that several dictionary definitions equate "cost" to a purchase price. Mr. Heino further contends that the statute refers to a singular ("the") and specific ("cost") amount, which he argues can only be what VA paid for the medication itself. However, a term as general as the word "cost" in section 1722A does not have a single plain meaning. *See* Webster's Ninth

New Collegiate Dictionary 295 (1986) (defining "cost" as "a: the amount or equivalent paid or charged for something: PRICE" as well as "b: the outlay or expenditure (as of effort or sacrifice) made to achieve an object"); Random House Unabridged Dictionary 457 (2d ed. 1993) (defining "cost" as "1. the price paid to acquire, produce, accomplish, or maintain anything: the high cost of a good meal. 2. an outlay or expenditure of money, time, labor, trouble, etc.: What will the cost be to me?"). Thus, the plain meaning of the term "the cost" in section 1722A(a)(2) is ambiguous and does not reveal congressional intent. *See Verizon Commc'ns, Inc. v. FCC*, 535 U.S. 467, 500 (2002) ("without any better indication of meaning than the unadorned term, the word 'cost' in [47 U.S.C. § 252(d)(1)], as in accounting generally, is 'a chameleon,' . . . a 'virtually meaningless' term") (quoting *Strickland v. Comm'r, Me. Dep't of Human Servs.*, 96 F.3d 542, 546 (1st Cir. 1996)).

Section 1722A's structure further demonstrates how the statute is ambiguous. "[T]he cost to the Secretary for medication" in section 1722A(a)(2) is that "described in paragraph (1)," which is a "30-day supply of medication furnished such veteran under this chapter on an outpatient basis for the treatment of a non-service-connected disability or condition." 38 U.S.C. § 1722A(a)(1). Mr. Heino argues that subsection (a)(2) relates only to a veteran's "supply of medication" and that because a veteran is only supplied with his or her actual medication, the intended "cost" in subsection (a)(2) can only be the actual cost of medication. However, as the Veterans Court found, it is not clear that section 1722A(a)(2) only refers to "the cost" of a veteran's "supply of medication" and may also refer to "the cost" to "furnish[]" veterans with medication. *Heino*, 24 Vet. App. at 374 ("The costs of furnishing the 30–day supply of the medication implies

that the cost of the medication also includes the costs incurred for providing or getting the pills into the hands of the veterans—the administrative costs associated with dispensing of the medication.").

Similarly, the legislative history surrounding section 1722A does not clarify the meaning of "the cost to the Secretary for medication." 38 U.S.C. § 1722A(a)(2). When Congress passed then section 622A(a)(2) (now section 1722A(a)(2)) in 1990, it was silent with respect to what "cost" was being referenced. Neither the 1990 Act, Pub. L. No. 101-508, § 8012, 104 Stat. 1388, nor the House Conference Report accompanying the Act, H.R. Rep. No. 101-964, at 2693-94 (1990) (Conf. Rep.), discuss what Congress may have meant with regard to section 1722A(a)(2).[7]

Finally, relevant canons of construction do not reveal a clear congressional intent for the phrase "the cost to the Secretary for medication." 38 U.S.C. § 1722A(a)(2). Mr. Heino argues that if Congress intended various "administrative costs" to be encompassed by section 1722A(a)(2) it would have said so expressly, as it has done elsewhere.

---

[7]    The Veterans Court cited legislative history from the 1999 amendment to section 1722A to support its interpretation of section 1722A(a)(2), which was enacted in 1990 and has never been amended. *Heino*, 24 Vet. App. at 374 (citing H.R. Rep. No. 106-237, § 201, 106th Cong., 1st Sess. (July 16, 1999) (to accompany H.R. 2116)). Although the Veterans Court's interpretation of section 1722A(a)(2) was correct, statements made nine years after a statute was enacted shed little light on an earlier statute's meaning. *See Huffman v. Office of Pers. Mgmt.*, 263 F.3d 1341, 1354 (Fed. Cir. 2001) ("post-enactment statements made in the legislative history of the 1994 amendment have no bearing on our determination of the legislative intent of the drafters of the 1978 and 1989 legislation").

*See, e.g.*, 38 U.S.C. § 2306(e)(3)(B) (the VA requires a veteran's survivors, in some circumstances, to "pay the amount of the administrative costs incurred by the Secretary" in providing an outer burial receptacle, among other costs). It is well settled that "[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purportedly in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983) (quoting *United States v. Wong Kim Bo*, 472 F.2d 720, 722 (5th Cir. 1972)). However, the statutes Mr. Heino cites to support his argument are neither part of section 1722A nor neighboring statutes. *See Sioux Honey Ass'n v. Hartford Fire Ins. Co.*, 672 F.3d 1041, 1052 (Fed. Cir. 2012) (citing *Russello* and looking to Congress's use of the term "jurisdiction" in 28 U.S.C. §§ 1581-1584 to determine the meaning of a term in 28 U.S.C. § 1585). Therefore, the presumption Mr. Heino relies upon is not applicable in this case because section 1722A and the statutes he cites are entirely different Acts.[8]

---

[8]    Mr. Heino further argues that the veteran's canon of construction, which states that "interpretive doubt is to be resolved in the veteran's favor," resolves any ambiguity in section 1722A(a)(2) in his favor. *Brown v. Gardner*, 513 U.S. 115, 118 (1994). It is not clear where the *Brown* canon fits within the *Chevron* doctrine, or whether it should be part of the *Chevron* analysis at all. *Compare Nielson v. Shinseki*, 607 F.3d 802, 808 (Fed. Cir. 2010) (stating that the *Brown* canon "is only applicable after other interpretive guidelines have been exhausted, including *Chevron*"), *with Disabled Am. Veterans v. Gober*, 234 F.3d 684, 692, 694 (Fed. Cir. 2000) (stating that the *Brown* canon "modif[ies] the traditional *Chevron* analysis"). Regardless, Mr. Heino asks this court to resolve "interpretive doubt" in his favor by holding that there is no doubt as to what "the cost to the Secretary" could

Thus, after employing traditional tools of statutory construction, we hold that Congress has not directly spoken to the precise question of whether "the cost to the Secretary for medication" refers to only the actual cost of medication or may also refer to administrative costs.

2.

When a statute is silent or ambiguous and implicitly delegates to an agency on a particular question, "the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Chevron*, 467 U.S. at 843. In such a circumstance, the agency's interpretation of a statutory term "governs if it is a reasonable interpretation of the statute—not necessarily the only possible interpretation, nor even the interpretation deemed *most* reasonable by the courts." *Entergy Corp. v. Riverkeeper, Inc.*, 556 U.S. 208, 218 (2009) (emphasis in original).

Mr. Heino argues that even if the phrase "the cost to the Secretary" is ambiguous and could encompass the actual cost of medication as well as the administrative cost associated with dispensing medication, the VA's copayment regulation is unreasonable because it is not linked to the actual cost of medication provided to the veteran. Rather, the VA's regulation allows the agency to charge a copayment based on generalized and averaged calculations. Moreover, Mr. Heino takes issue with the VA's reliance on the Consumer Price Index as a means to raise copayments because, Appellant argues, the cost of some medication may not rise with inflation. Mr. Heino believes that the VA's reliance on the Index completely

---

mean. However, we will not hold a statute unambiguous by resorting to a tool of statutory construction used to analyze ambiguous statutes.

untethers the copayment regulation from the VA's real-world costs as copayments rise according to an algorithm.

We hold that the VA's copayment regulation, 38 C.F.R. § 17.110, is reasonable in light of section 1722A and therefore valid. Given the ambiguous nature of the word "cost" in section 1722A(a)(2), it was reasonable for the VA to conclude that the statute prohibits the Secretary from charging veterans a copayment "in excess of the actual cost of the medication *and* the pharmacy administrative costs related to the dispensing of the medication." 66 Fed. Reg. at 36,961 (emphasis added). The VA has reasonably calculated its cost to determine it does not charge a veteran in excess of the cost to the Secretary for medication. The VA estimates that its national average administrative cost for dispensing prescription drugs is $12.39 for calendar year 2012. Prescription Drugs Not Administered During Treatment; Update to Administrative Cost for Calendar Year 2012, 77 Fed. Reg. 19,425 (March 30, 2012). Yet, the VA currently does not charge any veteran more than a $9 copayment under the regulation, and many copayments are currently frozen at $8. *See* 38 C.F.R. § 17.110; 76 Fed. Reg. 78,824, 78,824-78,825 (Dec. 20, 2011). Thus, the VA's regulation does not charge a veteran "in excess" of the average administrative costs associated with a veteran's prescription, let alone the combined administrative and actual cost of a prescription. As a result, the VA's copayment regulation is reasonable in light of the statute's ambiguity.

It is also reasonable for the VA to base copayments on the average administrative cost associated with dispensing medication, as opposed to the administrative cost associated with each individual's supply of medication. Congress stated that it was granting the VA "relatively broad discretion" to raise copayments so long as the increases the VA made were reasonable. H.R. Rep. No.

106-237, at 41-42. We find nothing unreasonable in the VA's choice not to base copayments on the exact calculated administrative cost associated with each veteran's prescription, but rather on an average administrative cost. Indeed, as the Government points out, charging copayments based on an average administrative cost without taking into account the actual cost of a veteran's medication was a way to ensure the VA remained an attractive medical provider to all veterans, not just those whose medication is cheap or entails a low administrative cost. Appellee Br. at 49; *see also* Oral Argument at 15:45 – 16:33, *Heino v. Shinseki*, No. 2011-7160, *available at* http://www.cafc.uscourts.gov/oral-argument-recordings/all/heino.html; 66 Fed. Reg. at 63,449 (considering copayment costs for other competitive plans).

Moreover, the VA's choice to increase copayments with the Medical Consumer Price Index is reasonable in light of section 1722A. After the VA set its base copayment to $7, an amount below what the agency calculated its administrative cost alone to be, the copayment regulation rises only when inflation, as measured by the prescription drug component of the Medical Consumer Price Index, increases a full dollar. 38 C.F.R. § 17.110. Such a program certainly reflects the "reasonable copayment increases" contemplated by Congress. H.R. Rep. No. 106-237, at 42. Although Mr. Heino argues that the price of some prescriptions may not rise with inflation, given the VA's "relatively broad discretion" to enact copayment regulations, H.R. Rep. No. 106-237, at 43, it was reasonable for the VA to rely on the Medical Consumer Price Index.

Finally, looking to the purpose of section 1722A as a whole, it is clear the VA's copayment regulation is reasonable. The purpose of section 1722A is to allow the VA to recoup some of the cost of its benefit program while

ensuring that the VA does not charge so much as "to result in veterans not seeking needed care and services . . . ." *Id.* The current regulation keeps copayments to a minimum by not charging veterans for the actual cost of their medication, 66 Fed. Reg. at 36,961, and charging a copayment below the VA's calculated administrative cost, 77 Fed. Reg. at 19,425. Moreover, the VA increases copayments only with inflation and has sought to reexamine its procedures to ensure that the VA continues to be an attractive medication provider. *See* 74 Fed. Reg. 69,283, 69,283-69,284 (freezing many copayments at $8 to determine whether increases in copayments under the prescription drug component of the Medical Consumer Price Index "might pose a significant financial hardship for certain veterans and if so, what alternative approach would provide appropriate relief for these veterans"). These measures adequately fulfill Congress's charge and therefore the VA's copayment regulation is reasonable.

## III.

For the reasons discussed above, we affirm the Veterans Court's decision.

## **AFFIRMED**

No Costs.

# United States Court of Appeals
# for the Federal Circuit

———————————————

**WILLIAM H. HEINO, SR.,**
*Claimant-Appellant,*

**v.**

**ERIC K. SHINSEKI, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee.*

———————————————

2011-7160

———————————————

Appeal from the United States Court of Appeals for Veterans Claims in Case No. 09-112, Judge William A. Moorman.

———————————————

PLAGER, *Circuit Judge*, concurring.

The statute at issue (38 U.S.C. § 1722A) is entitled "Copayment for Medications." Subsection (a)(1) specifies a copayment to be paid by veterans "for each 30-day supply of medication furnished such veteran . . . for the treatment of a . . . condition." The court in its opinion here recognizes that "medication" refers to the prescribed pills or tablets themselves, as distinct from any associated administrative cost. *See* Maj. Op. at 3, n.3.

Nevertheless, based on this statute the VA charges veterans a copayment calculated not on the actual cost of a veteran's individual medications or even an overall

average of actual costs for the medications VA dispenses, but on the overall average of administrative costs the VA incurs in dispensing the medications. Then, to further complicate the matter, the VA adjusts that copayment for inflation by using the prescription drug component of the Medical Consumer Price Index.

What are we to make of this? Judge Hagel, dissenting in the decision of the Veterans Court in this case, and Mr. Heino are both of the view that the statute is plain and unambiguous and means the actual cost of the medications, not the cost to administer them; and so it would seem. Mr. Heino would like his co-payment to be based only on his particular medicine, and then only the quantity of it that he takes. But the administrative complications that practice would introduce can only be imagined, given the several billion dollars worth of drugs that pass through the VA each year. Whatever may be the case for the individual medications themselves, the VA can reasonably approximate its annual administrative cost for dispensing medications, and roughly bases individual co-payments on that number averaged among its medical beneficiaries, though in recent years, for policy reasons, it has held that number from increasing. *See id.* at 9, n.6.

With a creative bit of definitional construction and *Chevron* analysis, we conclude that what the VA does is legitimate; this avoids throwing the VA co-payment system into total chaos, and probably is, in a broad sense, consistent with what Congress thought the VA should be doing. Even so, to clear itself from further challenges, the VA might want to either re-jigger its methodology to base it on the calculated cost of medications—no doubt arriving at a similar co-payment number—or get Congress to add consideration of administrative costs to the statute.