# United States Court of Appeals for the Federal Circuit

---

**SIEMENS ENERGY, INC.,**
*Plaintiff-Appellant*

**TITAN WIND ENERGY (SUZHOU) CO., LTD., CS WIND TECH CO., LTD., CS WIND VIETNAM CO., LTD., CHENGXI SHIPYARD CO., LTD.,**
*Plaintiffs*

**v.**

**UNITED STATES, WIND TOWER TRADE COALITION,**
*Defendants-Appellees*

---

2014-1725

---

Appeal from the United States Court of International Trade in No. 1:13-cv-00104-MAB, 1:13-cv-00107-MAB, Judge Mark A. Barnett.

---

Decided: November 25, 2015

---

MICHAEL S. SNARR, Baker & Hostetler LLP, Washington, DC argued for plaintiff-appellant. Also represented by ELLIOT JAY FELDMAN, SHAWNNA YASHAR.

MICHAEL HALDENSTEIN, Office of the General Counsel, International Trade Commission, Washington, DC argued

for defendant-appellee United States. Also represented by RHONDA HUGHES, DOMINIC L. BIANCHI.

DANIEL B. PICKARD, Wiley Rein, LLP, Washington, DC argued for defendant-appellee Wind Tower Trade Coalition. Also represented by DERICK HOLT, MAUREEN E. THORSON, USHA NEELAKANTAN.

------

Before NEWMAN, O'MALLEY, and WALLACH, *Circuit Judges.*

Opinion for the court filed by *Circuit Judge* NEWMAN.

Concurring in part opinion filed by *Circuit Judge* WALLACH.

NEWMAN, *Circuit Judge.*

Siemens Energy, Inc., an importer of utility scale wind towers, appeals the decision of the Court of International Trade, which upheld the International Trade Commission's (ITC or Commission) final affirmative injury determination in the antidumping and countervailing duty investigations of utility scale wind towers from the People's Republic of China and in the antidumping duty investigation of utility scale wind towers from the Socialist Republic of Vietnam (together, the subject merchandise).[1] The judgment is affirmed.

------

[1] *See Siemens Energy, Inc. v. United States*, 992 F. Supp. 2d 1315 (Ct. Int'l Trade 2014) ("CIT Op."); *see also Utility Scale Wind Towers from China and Vietnam*, 78 Fed. Reg. 10,210 (Int'l Trade Comm'n Feb. 2, 2013) ("ITC Op."); Utility Scale Wind Towers from China and Vietnam, Inv. Nos. 701-TA-486 and 731-TA-1195-1196, USITC Pub. 4372 (Feb. 2013) (Final) ("ITC Views").

DISCUSSION

The Department of Commerce determined that the subject merchandise was sold in the United States at less than fair value and that it received countervailable subsidies, and the ITC made an affirmative determination of material injury to the domestic industry. The determination was by divided vote of the six-member Commission; the issues on appeal concern the interpretation and effect of the divided vote.

19 U.S.C. § 1677(11) (2012) provides that an evenly divided vote is deemed an affirmative determination:

> *Affirmative determinations by divided Commission.* . . . If the Commissioners voting on a determination by the Commission . . . are evenly divided as to whether the determination should be affirmative or negative, the Commission shall be deemed to have made an affirmative determination.

§ 1677(11). The issue arises because the divided vote was not a simple three-to-three split on the question of material injury to the domestic industry; instead, two Commissioners found present material injury and one Commissioner found threat of material injury, while three Commissioners found that there was neither material injury nor threat of material injury. Siemens challenges the protocol of including threat of injury with actual injury, and argues that since four Commissioners found no present material injury, the ITC and the Court of International Trade erred in deeming the vote a tie. Siemens also argues that the findings of present material injury and threat of injury are incorrect.

**I**

On appeal from the Court of International Trade's review of Title 19 determinations by the ITC, this court applies the same standard of review as did the Court of

International Trade. *Fedmet Res. Corp. v. United States*, 755 F.3d 912, 918 (Fed. Cir. 2014). Thus we determine whether the Commission's determination is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 477 (1951). It need not be a preponderance, but must be "more than a scintilla." *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

Support by substantial evidence is determined on the entirety of the record, taking into account the evidence that supports and the evidence that detracts from the agency's conclusion. *Id.* at 488. In turn, when reviewing a divided vote of the Commission, each category of inquiry that contributes to the tie is separately determined, in implementation of the statute:

> 19 U.S.C. § 1677(11). For the purpose of applying this paragraph when the issue before the Commission is to determine whether there is—
>
> (A) material injury to an industry in the United States,
>
> (B) threat of material injury to such an industry, or
>
> (C) material retardation of the establishment of an industry in the United States,
>
> by reason of imports of the merchandise, an affirmative vote on any of the issues shall be treated as a vote that the determination should be affirmative.

The ITC statute thus foresaw possible factual variations, and Congress established that a tie vote produces an affirmative determination of injury.

## A.  Finding of Material Injury

The criteria for determination of material injury are set by statute:

19 U.S.C. § 1677(7)(B).  When considering whether a domestic industry is materially injured by imports of like products, the Commission:

**(i)** shall consider—

**(I)** the volume of imports of the subject merchandise,

**(II)** the effect of imports of that merchandise on prices in the United States for domestic like products, and

**(III)** the impact of imports of such merchandise on domestic producers of domestic like products, but only in the context of production operations within the United States; and

**(ii)** may consider such other economic factors as are relevant to the determination regarding whether there is material injury by reason of imports.

The period of investigation for this petition covered 2009 through the first six months of 2012.

Two Commissioners, Chairman Williamson and Commissioner Aranoff, found material injury to the domestic industry.  As to the volume of imports of subject merchandise, these Commissioners found "the volume of subject imports and the increase in volume to be significant, both in absolute terms and relative to consumption and production in the United States."  ITC Views at *15.  These Commissioners found that the imports' continuing growth in market share, accompanied by price suppression, "played a role in precluding the domestic industry

from increasing production to take advantage of the increase in apparent consumption." *Id.* at *16.

Turning to the price effects of the subject imports, these Commissioners found that although both import and domestic prices were rising and the imported wind towers had a higher total delivered cost than comparable domestic wind towers, the price gap was shrinking and potential customers were using the imports to put pressure on domestic prices. They stated:

> We find that although [original equipment manufacturers] ultimately are concerned with total delivered cost, they do not agree to purchase wind towers from the closest available source without regard to f.o.b. pricing. Rather, they negotiate with the domestic producers regarding f.o.b. prices, the largest component of delivered cost.

*Id.* at *18.

With respect to the impact of subject imports, these Commissioners found that the growing volume of the imports suppressed domestic prices, and that the domestic industry experienced "steep declines in operating income" between 2009 and 2012. *Id.* at *21. Taken together, Commissioners Williamson and Aranoff determined that there was material injury to the domestic industry.

On appeal to the Court of International Trade, and now to this court, Siemens argued that these findings are not supported by substantial evidence. Siemens states that these two Commissioners incorrectly compared the f.o.b. prices of the imports, instead of delivered costs, and that they accepted the false information that domestic producers had the capacity to supply the domestic market, at least at certain locations in the United States. Siemens also states that the domestic industry was subject to operational inefficiencies, and that production

during the period of investigation was slowed by the expected non-renewal of the Production Tax Credit and other tax incentives, whereby domestic producers chose not to expand capacity, in view of potential reduced demand.

The Court of International Trade considered the arguments, and concluded that the two Commissioners' findings of material injury are supported by substantial evidence on the record as a whole. The evidence of increasing import volume, price pressure and price suppression, unused domestic capacity, reduced income, and enlarging operating losses, supports these Commissioners' finding of material injury to the domestic industry. *See Consol. Edison Co.*, 305 U.S. at 229.

### B.  Finding of Threat of Material Injury

Commissioner Pinkert found that the domestic industry was threatened with material injury, applying the statutory factors for determining threat of injury:

19 U.S.C. § 2677(7)(F)(i). In determining whether an industry in the United States is threatened with material injury by reason of imports (or sales for importation) of the subject merchandise, the Commission shall consider, among other relevant economic factors:

**(I)** if a countervailable subsidy is involved, such information as may be presented to it by the administering authority as to the nature of the subsidy (particularly as to whether the countervailable subsidy is a subsidy described in Article 3 or 6.1 of the Subsidies Agreement), and whether imports of the subject merchandise are likely to increase,

**(II)** any existing unused production capacity or imminent, substantial increase in production capacity in the exporting country indicating the like-

lihood of substantially increased imports of the subject merchandise into the United States, taking into account the availability of other export markets to absorb any additional exports,

**(III)** a significant rate of increase of the volume or market penetration of imports of the subject merchandise indicating the likelihood of substantially increased imports,

**(IV)** whether imports of the subject merchandise are entering at prices that are likely to have a significant depressing or suppressing effect on domestic prices, and are likely to increase demand for further imports,

**(V)** inventories of the subject merchandise,

[…]

**(VIII)** the actual and potential negative effects on the existing development and production efforts of the domestic industry, including efforts to develop a derivative or more advanced version of the domestic like product, and

**(IX)** any other demonstrable adverse trends that indicate the probability that there is likely to be material injury by reason of imports (or sale for importation) of the subject merchandise (whether or not it is actually being imported at the time).

Commissioner Pinkert found that the domestic industry was in a vulnerable condition toward the end of the period of investigation, as the wind tower imports grew in volume and market share. He found that the subject imports were 192.8 percent higher in interim 2012 compared with interim 2011, accompanied by substantial increase in market share. ITC Views at *23. He deemed it significant that the price gap between the subject imports and domestic wind towers diminished substan-

tially over the period of investigation. He found that the producers in China and Vietnam had increased their capacity, and that they expected to increase their exports to the United States. He discussed the foreign producers' increasing dependence on the United States market, in the context of only a moderate increase in United States demand in the near future. He observed that several domestic producers had ceased production or closed plants.

Commissioner Pinkert found threat of "significant loss of revenues" and "declining employment, output, and productivity" in the imminent future, *id.* at *25, and concluded that the intensifying level of competition from the subject imports would be likely to threaten material injury to the domestic industry, which was already in a loss position. *Id.*

Siemens states that Commissioner Pinkert's finding of threat of material injury was weak and poorly supported, and should not receive equal weight with the findings of no injury. Siemens states that the finding of threat of injury was based on a perceived downward pricing trend that did not exist. The government characterizes this argument as a misstatement, because Commissioner Pinkert cited the increasing price trend and the shrinking price gap between the imports and the domestic product, and recognized that the domestic industry was under price pressure from the imports and was operating at a loss that was increasing.

Review of the record and argument shows that there was substantial evidence in support of Commissioner Pinkert's conclusion of threat of material injury. The Court of International Trade correctly sustained this finding.

## C.  Finding of No Material Injury

Commissioners Pearson, Johanson, and Broadbent found neither material injury nor threat of material injury. These Commissioners found that the investigation data did not establish price underselling, price depression, or price suppression. They recognized the erosion of domestic producers' market share and profitability, but found that it was not shown that this situation would continue into the future, explaining that the unused production capacity in China had not yet been qualified to meet United States standards and is inconveniently located for shipment to the United States. Siemens argues that the Commission and the Court of International Trade were incorrect in counting Commissioner Pinkert's vote of threatened injury on the side of material injury. Siemens stresses that four of the six Commissioners found no actual material injury, and argues that the vote was not evenly divided. Siemens also argues that the three Commissioners who found injury or threat of injury failed to consider evidence that "fairly detracts from its weight," *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1351 (Fed. Cir. 2006). However, review of the Commission determinations does not support this criticism.

The record shows investigation of and inquiry into the statutory factors, including the competitive characteristics of the imported and domestic wind towers, the nature of the market, the price characteristics of the industry, and the impact of the subject imports on the domestic industry. There was discussion of f.o.b. and delivered costs, the price patterns, and other issues including the allegations of domestic operational inefficiencies.

Although individual Commissioners reached divergent conclusions, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383

U.S. 607, 620 (1966). The Court of International Trade explained its affirmance of the Commission's conclusion:

> While the court must consider the record as a whole, when the Commission has based its determination on substantial evidence and considered the evidence that fairly detracts from its conclusion, the court may not displace the agency's choice.

CIT Op. at 1331. We agree that the evidence was such that "a reasonable mind might accept as adequate to support the conclusion." *Universal Camera,* 340 U.S. at 477. We conclude that the Court of International Trade correctly upheld the Commission's affirmative injury determination.

## II

The Department of Commerce levied countervailing duties, but limited the duties to imports after the decision date of February 15, 2013, in accordance with the "Special Rule" of 19 U.S.C. §§ 1671e(b) and 1673e(b), whereby determinations based on threat of injury are prospective only. This aspect was previously sustained by the Court of International Trade, reported at *Wind Tower Trade Coal. v. United States*, 904 F. Supp.2d 1349 (Ct. Int'l Tr. 2013), and affirmed by the Federal Circuit at *Wind Tower Trade Coal. v. United States*, 741 F.3d 89 (Fed. Cir. 2014) (denying injunction in view of the "fragmented voting pattern" where four of the six Commissioners did not find present material injury). Although the Coalition again questions this result, that ruling is the law of this case. We discern no basis for reconsideration.

The decision of the Court of International Trade is

**AFFIRMED.**

# United States Court of Appeals
# for the Federal Circuit

———————————

**SIEMENS ENERGY, INC.,**
*Plaintiff-Appellant*

**TITAN WIND ENERGY (SUZHOU) CO., LTD., CS WIND TECH CO., LTD., CS WIND VIETNAM CO., LTD., CHENGXI SHIPYARD CO., LTD.,**
*Plaintiffs*

**v.**

**UNITED STATES, WIND TOWER TRADE COALITION,**
*Defendants-Appellees*

———————————

2014-1725

———————————

Appeal from the United States Court of International Trade in Nos. 1:13-cv-00104-MAB, 1:13-cv-00107-MAB, Judge Mark A. Barnett.

———————————

WALLACH, *Circuit Judge*, concurring in part.

I concur in the result that the majority reaches, but write separately to ensure that what we say (or do not say) today is not misconstrued.

It is important to highlight certain relevant facts. On January 24, 2012, following petitions filed by the Wind Tower Trade Coalition ("Coalition"), the United States Department of Commerce ("Commerce") initiated the

subject investigations.  In February 2012, the United States International Trade Commission ("ITC" or "Commission") issued a unanimous affirmative preliminary injury determination, finding that "there is a reasonable indication that an industry in the United States is threatened with material injury by reason of" the subject imports.  *Utility Scale Wind Towers from China and Vietnam*, 77 Fed. Reg. 9700, 9700 (ITC Feb. 17, 2012) (preliminary determination).

With Commerce having issued a final determination that the subject merchandise was sold in the United States at less than fair value and that such merchandise also benefitted from countervailable subsidies, the ITC made an affirmative final injury determination.  Two Commissioners found material injury; four did not; one found threat of material injury;[1] and three found that there was no threat of such injury.

The majority's conclusion implicitly rejects, without discussion, several arguments that Appellant Siemens Energy, Inc. ("Siemens") unsuccessfully raised before the United States Court of International Trade ("CIT") and that it again raises on appeal.  They are addressed below.  Moreover, the majority concludes its opinion with a brief discussion of our recent holding in *Wind Tower Trade Coalition v. United States*, 741 F.3d 89 (Fed. Cir. 2014).  I decline to join that aspect of the majority decision for the reasons provided below.  I discuss each in turn.

---

[1]    "The two Commissioners who made affirmative determinations on the basis of material injury did not make a threat of material injury determination." *Siemens Energy, Inc. v. United States*, 992 F. Supp. 2d 1315, 1322 n.6 (Ct. Int'l Trade 2014).

I. The CIT Correctly Applied the Standard of Review

Siemens contests the ITC's decision to combine the vote for threat of material injury with the two votes for material injury to reach a final affirmative injury determination.  I agree with the majority that the unambiguous terms of the statute support the ITC's interpretation.[2] *See* 19 U.S.C. § 1677(11) (2012) (explaining that, in the context of an evenly divided vote, "an affirmative vote on [material injury, threat of material injury, or material retardation of the establishment of an injury] shall be treated as a vote that the determination should be affirmative").

When an affirmative Commission determination becomes subject to judicial review, sections 1516a(a)(2)(A)(i)(II), (a)(2)(B)(i), and (b)(1)(B)(i) of Title 19 of the United States Code state that such determination is reviewed under the substantial evidence standard. Siemens argues that "the CIT misapplied the standard of review, treating affirmative-voting Commissioners in the minority as majorities."  Appellant's Br. 42 (capitalization omitted).   According to Siemens, this misapplication meant that the CIT unreasonably gave "deference to factual findings rejected by a clear majority of the Com-

---

[2]    The two step framework in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984) governs judicial review of the Commission's interpretation of the trade remedies statutes.  *Nucor Corp. v. United States*, 414 F.3d 1331, 1336 (Fed. Cir. 2005). Considering the first step, "'Congress has directly spoken to the precise question at issue'" in the present matter. *Heino v. Shinseki*, 683 F.3d 1372, 1377 (Fed. Cir. 2012) (quoting *Chevron*, 467 U.S. at 842).  Thus, we need not address the second step of the *Chevron* analysis—whether the Commission's "answer is based on a permissible construction of the statute."  *Chevron*, 467 U.S. at 843.

mission." *Id.* at 47 (capitalization omitted). Siemens cites *Wind Tower Trade Coalition* in support of its argument. *Id.* at 46.

That record evidence contradicts the ITC's conclusion does not mean that it misapplied the standard of review. Under the substantial evidence standard of review, we must affirm reasonable determinations "even if it is possible to draw two inconsistent conclusions from the evidence." *Fleming v. Escort Inc.*, 774 F.3d 1371, 1375 (Fed. Cir. 2014) (internal quotation marks and citation omitted). Siemens states that "[i]t is self-evident from the nature of the proceedings before the Commission why judicial deference should be a function of the common factual views rather than the nature of the Commissioner's vote," Appellant's Br. 47, but that argument asks us to do what we cannot—reweigh facts already considered by the Commission. *See Matsushita Elec. Indus. Co. v. United States*, 750 F.2d 927, 936 (Fed. Cir. 1984).

Finally, Siemens misconstrues our holding in *Wind Tower Trade Coalition*. In that decision, this court applied *Chevron* to defer to Commerce's permissible interpretation of two ambiguous statutory provisions—neither of which is at issue in this case—to determine *when* antidumping and countervailing duties become effective. *Wind Tower Trade Coal.*, 741 F.3d at 96–100 (interpreting 19 U.S.C. §§ 1671e(a) and 1673e(a)). We affirmed Commerce's interpretation that, under 19 U.S.C. §§ 1671e(a) and 1673e(a), it would not make sense in that particular context to apply § 1677(11) to combine votes of "material injury," "threat of material injury," and "material retardation." *Id.* In that case, we did *not* address—as in this case—whether the Commission properly followed the unambiguous terms of § 1677(11) in issuing an affirmative final injury determination. *Id.*

## II. Substantial Evidence Supports the Material Injury and Threat of Material Injury Determinations

I agree with the majority that substantial evidence supports the ITC's material injury and threat of material injury findings. With respect to the threat of material injury determination, Commissioner Pinkert's "downward pricing trend" finding was not wholly based on import price, but also on the falling *gap* in delivered costs for projects, suggesting increased competition between subject imports and the domestic like product and downward pressure on prices. *Utility Scale Wind Towers from China and Vietnam*, Inv. Nos. 701-TA-486 and 731-TA-1195-1196, USITC Pub. 4372 at 34–35 (Feb. 2013) (Final). He did not find, as Siemens claims, that subject import prices were falling. *Id.*

Siemens also contends that Commissioner Pinkert erroneously cited projects that occurred outside the period of investigation ("POI") and, thus, that those projects "had no bearing on the end-of-POI 'trend' he postulated." Appellant's Br. 28 (citation omitted). However, a Commissioner may infer a trend in the "imminent future" by "examining the 'trend' evidenced by the yearly data." *Asociacion de Productores de Salmon y Trucha de Chile AG v. U.S. Int'l Trade Comm'n*, 26 Ct. Int'l Trade 29, 38 (2002) (citing *Bando Chem. Indus., Ltd. v. United States*, 17 Ct. Int'l Trade 798, 807 (1993), *aff'd*, 26 F.3d 139 (Fed. Cir. 1994) (unpublished)).

Finally, Siemens argues that higher-priced subject imports are inconsistent with adverse effects, Appellant's Br. 27, but that argument does not consider the convergence of domestic and import prices. It was reasonable for Commissioner Pinkert to infer from converging prices that competition was increasing between domestic products and subject imports.

III. Argument Not Raised that the Majority Addresses

At the end of the opinion, the majority discusses our recent decision in *Wind Tower Trade Coalition*, which addressed when antidumping and countervailing duties become effective under 19 U.S.C. §§ 1671e(a) and 1673e(a). *See* 741 F.3d at 96–100. I decline to join this portion of the decision.

The majority suggests that the Coalition contests that decision in this appeal. However, no portion of the Coalition's response brief suggests that it does. *See generally* Coalition's Br. Moreover, we could not review such a claim at this stage absent both (1) a properly filed cross-appeal of the underlying CIT decision by the Coalition, *see Carnival Cruise Lines, Inc. v. United States*, 200 F.3d 1361, 1365 (Fed. Cir. 2000) ("The general rule is that, without taking a cross-appeal, the prevailing party may present any argument that supports the judgment in its favor, except where the result of acceptance of its argument would be a reversal or modification of the judgment rather than an affirmance." (internal quotation marks and citation omitted)),[3] and (2) a request from the Coalition to reconsider *Wind Tower Trade Coalition* en banc due to its precedential status, *Deckers Corp. v. United*

---

[3]    For the Coalition to pursue such a claim, it would have had to name Commerce as a party to the suit, given that Commerce—not the ITC—determines when the duties become effective. *Wind Tower Trade Coal.*, 741 F.3d at 96–100. Commerce is not a party to this appeal, nor was it a party before the CIT in this action. *See generally Siemens*, 992 F. Supp. 2d 1315. In any event, the opportunity for further review of this issue by the Coalition expired when it declined to seek en banc review or file a petition for writ of certiorari, and res judicata would foreclose any attempt to relitigate the issue in this action.

*States*, 752 F.3d 949, 965 (Fed. Cir. 2014) (explaining that panels do not have the authority to overrule prior precedential panel decisions unless the en banc court or the Supreme Court overturns the prior decision).

Siemens briefly discusses our duty effective date holding in *Wind Tower Trade Coalition* in the background section of its opening brief. Appellant's Br. 18–20. Even assuming that we construed that discussion to be an argument, our precedent would require us to consider it waived for at least two reasons. *See In re Baxter Int'l, Inc.*, 678 F.3d 1357, 1362 (Fed. Cir. 2012) (holding that a party waives an argument that it raises in the background section of its brief, but not in the argument section); *see also SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1320 (Fed. Cir. 2006) (stating that when "a party includes no developed argumentation on a point . . . we treat the argument as waived" (quoting *Anderson v. City of Boston*, 375 F.3d 71, 91 (1st Cir. 2004))). In any event, it is highly unlikely that Siemens would contest our holding in *Wind Tower Trade Coalition*, given that it had the effect of limiting Siemens's antidumping and countervailing duty liability.

For these reasons, I respectfully concur in part.