﻿Citation Nr: AXXXXXXXX
Decision Date: 06/29/20 Archive Date: 06/29/20

DOCKET NO. 190814-20106
DATE: June 29, 2020

ORDER

Entitlement to service connection for a right wrist disorder is denied.

Entitlement to service connection for an acquired psychiatric disorder, to include posttraumatic stress disorder (PTSD) is granted.

FINDINGS OF FACT

1. Residuals of a right wrist injury are not demonstrated.

2. The competent and credible evidence is at least in equipoise as to whether the Veteran has PTSD that is related to military sexual trauma (MST) during a qualifying period of ACDUTRA. 

CONCLUSIONS OF LAW

1. Chronic residuals of a right wrist injury were not incurred or aggravated during a qualifying period of ACDUTRA service. 38 U.S.C. §§ 101, 1110, 5103A, 5107 (2012); 38 C.F.R. §§ 3.6, 3.303 (2019).

2. Resolving reasonable doubt in the Veteran’s favor, the criteria for an award of service connection for PTSD have been met. 38 U.S.C. §§ 101, 1110, 5107 (2012); 38 C.F.R. §§ 3.6, 3.102, 3.303, 3.304 (2019).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran had no active duty service during her time in the Army Reserve, but she did have inactive duty for training (INACDUTRA) from June 27, 2006 to September 9, 2006, and active duty for training (ACDUTRA) from June 11, 2007 to June 28, 2007 and August 15, 2007 to October 4, 2007. She has been awarded service connection for a knee disorder and for a secondary status post knee surgery scar based on injuries incurred during ACDUTRA, and her veteran status has been established. 

The Board notes that the acquired psychiatric disorder claim has been adjudicated separately based on the Veteran’s claims of PTSD and unspecified depressive disorder. The issues are combined herein. See Clemons v. Shinseki, 23 Vet. App. 1 (2009) (holding that when a claimant makes a claim, he/she is seeking service connection for symptoms regardless of how those symptoms are diagnosed or labeled).

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for veterans dissatisfied with VA’s decision on their claim to seek review. 

A Statement of the Case (SOC) was issued in June 2019 which denied the claims on appeal. The Veteran timely appealed the decision directly to the Board and selected the “Evidence Submission “review option. See August 2019 VA Form 10182, Decision Review Request: Board Appeal (Notice of Disagreement). Under this option, the Board reviews the evidence of record at the time of the AOJ’s decision on the issues on appeal, in addition to evidence submitted by the Veteran or his or her representative with the VA Form 10182 or within 90 days following its receipt.

The Board notes that the issues on appeal noted in the VA Form 10182 included service connection for PTSD and separately service connection for unspecified depressive disorder. The Board has consolidated the issues into a single issue of service connection for an acquired psychiatric disorder. 

Service Connection 

Veterans are entitled to compensation if they develop a disability “resulting from personal injury suffered or disease contracted in line of duty, or for aggravation of a preexisting injury suffered or disease contracted in line of duty.” 38 U.S.C. § 1110 (wartime service), 1131 (peacetime service) (2019).

To establish entitlement to service-connected compensation benefits, a Veteran must show: “(1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service -the so-called ‘nexus’ requirement.” Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004). Service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service establishes that the disability was incurred in service. 3 8 C.F.R. § 3.303(d) (2019). The determination as to whether these requirements are met is based on an analysis of all the evidence of record and the evaluation of its credibility and probative value. See Baldwin v. West, 13 Vet. App. 1, 8 (1999).

In the context of Reserve or National Guard service, the term “active military, naval, or air service” includes active duty, any period of active duty for training (ACDUTRA) during which the individual concerned was disabled or died from a disease or injury incurred or aggravated in line of duty, and any period of inactive duty training (INACDUTRA) during which the individual concerned was disabled or died from an injury incurred or aggravated in line of duty. 38 U.S.C. § 101 (21), (24) (2012); see also 38 C.F.R. § 3.6 (2019). Diseases or injuries incurred or aggravated while performing ACDUTRA are eligible for service connection. 38 U.S.C. §§ 101 (24), 106, 1110 (2012). In other words, when a claim is based on a period of Reserve or National Guard service, it must be shown that the individual concerned became disabled (or died) as a result of a disease or injury incurred or aggravated in the line of duty on Reserve ACDUTRA/INACDUTRA or during Federalized National Guard service.

Congress has specifically limited entitlement to service connection for disease or injury to cases where such incidents have resulted in disability. 38 U.S.C. § 1110 (2012). See also McClain v. Nicholson, 21 Vet. App. 319, 321 (2007). Accordingly, where competent medical evidence indicates that the appellant does not have the disability for which service connection is sought, there can be no valid claim for service connection for the disability. Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992).

Service Connection for a Right Wrist Disorder.

The Veteran asserts that service connection is warranted for a right wrist disorder in that she suffered initial injury during a period of ACDUTRA. 

Review of the record does reflect that the Veteran suffered a contusion to the right wrist when a couch was dropped from approximately 3 feet onto her right thumb/hand/wrist in June 2007 during a period ACDUTRA. Naproxen was prescribed and a bandage was applied. 

The remaining record, to include additional service treatment records (STRs) and VA treatment records dated through 2019, do not reflect additional right thumb/hand/wrist complaints, and no specific condition associated with the injury in 2007 has been reported in the Veteran’s statements of record. It is also noted that the Veteran failed to report for a scheduled examination in 2018 without good cause. 38 C.F.R. § 3.655(b) (2019). 

In considering the evidence of record under the laws and regulations as set forth above, the Board finds that service connection is not warranted for a chronic right wrist disorder. In the absence of a disability, compensation may not be awarded. Specifically, in the absence of evidence of a right wrist disorder, there can be no grant of service connection under the law. See Brammer, supra. 

To the extent that the Veteran asserts she has a current chronic disability manifested by the 2007 injury during ACDUTRA, her lay assertions are not considered competent medical evidence. Although she is certainly capable of describing the history in this case and competent to report symptoms which are within the realm of his personal experience, she is not competent to render a medical diagnosis of a present disability, as this requires medical expertise. Davidson v. Shinseki, 581 F.3d 1313 (2009). For this purpose, the Veteran’s statements, standing alone, have little probative value, and the Board assigns more weight to the objective medical evidence of record which includes no complaints of or diagnosis of a right wrist problem for many years. 

Furthermore, while no examination has been conducted involving the Veteran’s right wrist claim, the Board concludes that a remand for a VA examination is unnecessary for this disability. The Veteran failed to show when VA examination was scheduled, and the medical record includes no associated wrist complaints or condition. As a result, there was no pre-decisional duty to assist error. 

The Board has also considered the holding in Saunders v. Wilkie, 886 F.3d 1356, (Fed. Cir. 2018), wherein the Federal Circuit found that the term "disability" as used in 38 U.S.C. § 1110 "refers to the functional impairment of earning capacity, not the underlying cause of said disability," and held that "pain alone can serve as a functional impairment and therefore qualify as a disability." However, the record does not show pain with functional impairment and this the holding in Saunders is not applicable to the present case. 

Based on a review of the foregoing evidence and the applicable laws and regulations, the Board finds that the preponderance of the evidence is against the Veteran’s claims for service connection of a right wrist disorder. The benefit-of-the-doubt doctrine is not for application, and the claims must be denied. 38 U.S.C.§ 5107(b) (2012); 38 C.F.R. § 3.102 (2019); Gilbert, supra. 

Service Connection for an Acquired Psychiatric disorder, to include PTSD and Depressive Disorder.

Service connection for PTSD specifically requires medical evidence establishing a diagnosis of the disability, credible supporting evidence that the claimed in-service stressor actually occurred, and a link, established by medical evidence, between the current symptomatology and the claimed in-service stressor. See 38 C.F.R. § 3.304(f) (2019).

At the outset, the Board is mindful that veterans claiming service connection for PTSD due to personal assault face unique problems documenting their claims. See Proposed Rule, PTSD Based on Personal Assault, 65 Fed. Reg. 61132 (Oct. 16, 2000) (“Many incidents of in-service personal assault are not officially reported, and veterans may find it difficult to produce evidence to prove the occurrence of this type of stressor”). If a PTSD claim is based on military sexual trauma or personal assault in service, evidence from sources other than the Veteran’s records may corroborate the Veteran’s account of the stressor incident. Examples of such evidence include but are not limited to: records from law enforcement authorities, rape crisis centers, mental health counseling centers, hospitals or physicians; pregnancy tests or tests for sexually transmitted diseases; and statements from family members, roommates, fellow service members, or clergy. 38 C.F.R. § 3.304(f)(5) (2019).

Evidence of behavior changes following the claimed assault is one type of relevant evidence that may be found in these sources. Examples of behavior changes that may constitute credible evidence of the stressor include, but are not limited to: a request for a transfer to another military duty assignment; deterioration in work performance, substance abuse, episodes of depression, panic attacks, or anxiety without an identifiable cause; or unexplained economic or social behavior changes. 38 C.F.R. § 3.304(f)(5) (2019).

Further, the United States Court of Appeals for the Federal Circuit observed that 38 C.F.R. § 3.304 (f)(5) specifically states that a medical opinion may be used to corroborate a personal assault stressor, noting “medical opinion evidence may be submitted for use in determining whether the occurrence of a stressor is corroborated.” See Menegassi v. Shinseki, 683 F.3d 1379, 1382 (Fed. Cir. 2011) (observing that the United States Court of Appeals for Veterans Claims erred when it determined that a medical opinion based on a post-service examination of a veteran cannot be used to establish the occurrence of a stressor); see also Patton v. West, 12 Vet. App. 272, 280 (1999) (rejecting the requirement that “something more than medical nexus evidence is required for ‘credible supporting evidence’“ in personal assault cases).

In cases involving an allegation that PTSD is connected to MST, the Federal Circuit has also held that “the absence of a service record documenting an unreported sexual assault is not pertinent evidence that the sexual assault did not occur.” AZ v. Shinseki, 731 F.3d 1303, 1318 (Fed. Cir. 2013).

Except as otherwise provided by law, a claimant has the responsibility to present and support a claim for benefits under laws administered by the Secretary. The Secretary shall consider all information and lay and medical evidence of record in a case before the Secretary with respect to benefits under laws administered by the Secretary. When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant. 38 U.S.C. § 5107 (2012); 38 C.F.R. § 3.102 (2019); see also Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990). To deny a claim on its merits, the evidence must preponderate against the claim. Alemany v. Brown, 9 Vet. App. 518, 519 (1996), citing Gilbert, 1 Vet. App. At 54.

The Veteran contends that she was the victim of MST. In statements of record from October 2017 and December 2017, she alleges that during her time of service in approximately June 2017, she was sexually harassed and ultimately raped by a superior officer. She was 17 years old at the time. She explained that the officer initially was aggressive and sexually harassed her by rubbing up against her. She made a decision to enter active service and requested transfer. Thus, while he continued to harass her, she knew that she was soon to be transferred. The transfer occurred (noted by the Board to be corroborated in the military records), but as her new unit was nearby, he ultimately saw her again, and the sexual harassment continued. The officer ultimately raped her in the latrine. See the Veteran’s December 2017 statement for additional details and for names of the parties involved. 

Post service VA records from 2008 through 2019 are of record. On these records, she often denied any psychiatric symptomatology and any sexual trauma in her history. There are occasional reports of anxiety/depression in 2012 and 2016. In 2015, she received five staples to the back of the head when her mother-in-law attacked her with a knife. There are reports of a troubled past, to include domestic abuse. In early 2017, the Veteran again denied feeling anxiety or depression. However, she filed a claim for service connection for psychiatric complaints associated with MST in October 2017. 

VA examination was conducted in February 2018. There was an in-person examination, and the claim file was reviewed. The examiner concluded that the Veteran did not meet the criteria for diagnosis of PTSD. Instead, unspecified depressive disorder was diagnosed. The examiner noted that she had history of “horrible” experiences that began in early childhood and continued in the military and post military. He believed that the Veteran “had been dealing with an agitated form of depression going way back to her chaotic early childhood.” As this presupposed a diagnosis of PTSD, there was “no need to elaborate on that here.” The examiner did opine that the condition was worsened by her in-service experiences. The examiner also noted that it was his opinion that the Veteran was an inaccurate historian, primarily based on reports that she was inaccurate when reporting dates and her age when the incidents occurred. 

The Veteran failed to show for additional VA examination scheduled in September 2018. 

In a January 2019 private report by M.L.C., MD, FACP, that included review of the record and examination of the Veteran, it was concluded that it was more likely than not that the Veteran had PTSD as a result of in-service MST. The examiner explained why he felt that she met the Diagnostic and Statistical Manual of Mental Disorders (DSM-V), to included distressing memories/dreams of the assault, avoidance of associated stimuli, exaggerate negative beliefs about herself, extensive irritability, sleep disturbance, and impairments in her interpersonal relationships. Moreover, the examiner explained why, in his opinion, there was nothing in the record to suggest that she was a poor historian or lacked veracity. Specifically, he noted that inability to recall some details of a distressing incident was a component of PTSD and not a qualifying criterion. 

In an October 2019 report by a private examiner, J.M. PhD, HSPP, who also reviewed the record and conducted a videoconference with the Veteran, PTSD due to MST was the diagnosis. The private examiner disagreed with the VA examiner’s 2018 opinion. Specifically, as to the VA examiner’s statement that she was not an accurate historian, he noted that victims often do not report such incidences due to shame and fear. Moreover, the record endorsed PTSD symptoms (examples provided), and while she had some psychiatric problems prior to service, it was more likely than not that current PTSD and concomitant substance abuse disorder were the result of in-service MST. 

At the outset, the Board agrees with the private examiners’ opinions that minor discrepancies in relating the incidences in question do not detract from the veracity of the Veteran’s report of MST. The two private examiners also stated that the diagnosis of PTSD due to MST was unequivocal and that associated symptoms were endorsed in the medical record. 

There is no dispute that the Veteran is competent to report symptoms of anxiety, depression, avoidance, and re-experiencing traumatic events, because this requires only personal knowledge as it comes to her through her senses. Layno v. Brown, 6 Vet. App. 465, 470 (1994). In such cases, the Board is within its province to weigh that testimony and to make a credibility determination. The Board finds the Veteran’s statements about her in-service sexual trauma and her current symptoms to be credible, as there is internal consistency, facial plausibility, and consistency with other evidence of record. The Veteran’s assertions appear to be genuine, credible and consistent. See Caluza v. Brown, 7 Vet. App. 498, 511 (1995). 

The Board has considered the evidence discussed above and finds that the Veteran has presented multiple factually consistent accounts in the clinical record of having been assaulted during service. As noted above, these accounts have been consistent since the time that the Veteran first sought mental health treatment.

The Board is aware of the conflicting medical evidence as to whether the Veteran has an acquired psychiatric disorder related to active service. In 2018, the VA examiner definitely was of the opinion that PTSD was not present. He did, however, suggest that her depression preexisted service and was aggravated therein. (Here, as to any preexisting depressive disorder, the Board notes that it is unnecessary to discuss periods of ACDUTRA and the presumption of soundness and whether it applies or not due to the favorable decision reached as to the claim of PTSD due to in-service MST. See, e.g., Paulson v. Brown, 7 Vet. App. 466, 471 (1995) and Smith v. Shinseki, 24 Vet. App. at 45-46.) As summarized above, private examiners in 2019 have diagnosed PTSD related to in-service MST. 

Weighing the positive findings of the private physicians against those of the VA examiner, the evidence is at least in relative equipoise as to whether currently diagnosed PTSD is related to service. Accordingly, resolving reasonable doubt in favor of the Veteran, the Board finds that service connection for PTSD due to MST is warranted. 38 U.S.C. § 5107(b) (2012); 38 C.F.R. § 3.102 (2019); Gilbert supra.

 

E. I. VELEZ

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board T. Hal Smith, Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.